## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| RUSS GODFREY and | ) | |
| NATALIE GODFREY, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No.: CIV-19-329-JD |
| | ) | |
| CSAA FIRE & CASUALTY | ) | |
| INSURANCE COMPANY, | ) | |
| a foreign corporation, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT'S MOTION *IN LIMINE* NOS. 2-7

Defendant, CSAA Fire & Casualty Insurance Company ("CSAA"), respectfully moves the Court *in limine* for an Order excluding all evidence or mention by Plaintiffs, Russ Godfrey and Natalie Godfrey ("Plaintiffs"), Plaintiffs' counsel, or any of Plaintiffs' witnesses of the following:

### NO. 2

### *INADMISSIBILITY OF "GOLDEN RULE" TESTIMONY BY WITNESSES OR COMMENTS BY COUNSEL*

"It is improper for counsel to argue the Golden Rule – that is, that the jurors should put themselves into the shoes of the Plaintiffs and do unto [it] as they would have [it] do unto them under similar circumstances." 33 Fed. Proc., L.Ed. §77:262. The Tenth Circuit has recognized the impropriety of arguing the Golden Rule in *Blevins v. Cessna Aircraft Co.*, 728 F.2d 1576 (Tenth Circuit 1984), where it stated:

> We note that a Golden Rule appeal "is universally recognized as improper because it encourages the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence.

(*Id.* at 1580.)

Generally, an improper "Golden Rule" argument occurs when an attorney asks the jury, in a personal injury case, to put themselves in the shoes of the plaintiff and award damages in an amount that they would want for their own pain and suffering. 75A Am.Jur.2d Trial § 547. Alternatively, an attorney may ask the jury to consider the harm to the public. Accordingly, CSAA requests that Plaintiffs be barred at trial from making any such arguments which would fall under the Golden Rule, as such arguments would unfairly prejudice CSAA.

## NO. 3

### *INADMISSIBILITY OF ANY LAY WITNESS TESTIMONY OR ARGUMENTS BY COUNSEL OF WHAT IS "FAIR" OR "REASONABLE"*

Defendant, CSAA, moves this Court for an Order in limine prohibiting the Plaintiffs, Plaintiffs' counsel, and Plaintiffs' witnesses, from making statements that allude to or purport to define Oklahoma's bad faith standard. This includes any reference to or use of vague phrases such as "unfair" or "unreasonable" to describe Plaintiffs' perception of CSAA's handling and evaluation of Plaintiffs' claim. Plaintiffs' use of these phrases will serve no purpose other than to unfairly prejudice CSAA by confusing the issues and misleading the jury.

The purpose of this Motion is to direct the Court's attention to the tactics that may be employed by Plaintiffs and/or Plaintiffs' counsel, which are designed to confuse the jury and instruct the jury on the law. CSAA anticipates Plaintiffs' counsel will ask the following types of questions to the witnesses: (1) Would you agree that (certain type of conduct) would be unfair to your insured? (2) Would you agree that (certain type of conduct) would be unreasonable?

Although Plaintiffs may believe this testimony is helpful to the jury, it is tantamount to allowing a lay witness – and also an expert witness – to instruct the jury on Oklahoma's bad faith law. As such, this not only interferes with the Court's duty to instruct the jury on the applicable law, it also irrelevant and unfairly prejudices CSAA. CSAA is obligated to treat it insureds in compliance with Oklahoma law and its insurance policy. The witnesses may discuss the relevant policy provisions if Plaintiffs wish, but the Court must instruct on the law.

> PROPOSITION I:     THE COURT'S DUTY AT TRIAL IS TO INSTRUCT THE JURY
> ON THE LAW.

Historically, one of the most important roles of the court at trial is to instruct the jury on the law. *Herron v. Southern Pac. Co.*, 283 U.S. 91 (1931). The court's involvement in explaining the law to the jury is paramount to a jury's accurate understanding and comprehension of the issues at trial. Indeed, it is reversible error for a court to fail to instruct the jury properly as to the law of applicable to the evidence in the case. *Union Transport Co. v. Mitchell*, 219 P.2d 1015,1018 (Okla. 1950). In the United States Supreme Court case of *Herron*, the Court eloquently described a judge's duty at trial stating:

In a trial by jury in a federal court, the judge is not a mere moderator, but is the governor of the trial for purpose of assuring its proper conduct and of determining questions of law. This discharge of the judicial function as at common law is an essential factor in the process for which the Federal Constitution provides.

*Id.* at 95.

In *Price v. Glosson Motor Lounge, Inc.*, 509 F.2d 1033 (4th Cir. 1975), the 4th Circuit noted:

It is the inescapable duty of the trial judge to instruct the jurors, fully and correctly, on the applicable law of the case, and to guide, direct, and assist them toward an intelligent understanding of the legal and factual issues involved in their search for truth.

*Id.* at 1036 n.3 (quoting 9 Wright & Miller, Federal Practice and Procedure, § 2255 at 654 (1971)).

Under Oklahoma law, "[a]n insurer has an 'implied-in-law duty to act in **good faith** and **deal fairly** with the insured to ensure that the policy benefits are received.'" *Badillo v. Mid Century Ins. Co.*, 2005 OK 48, ¶ 26, 121 P.3d 1080, 1093 (emphasis added) (quoting *Christian v. American Home Assurance Co.*, 1977 OK 141, 577 P.2d 899, 901). It is Plaintiffs' burden to present facts in support of their bad faith claim against CSAA. More specifically, Plaintiffs have the burden of proof by the greater weight of the evidence that CSAA violated its duty of **good faith** and **fair** dealing by **unreasonably**, in **bad faith**, refusing to pay Plaintiffs the proper amount under their policy of insurance. *See Oklahoma Uniform Jury Instruction No. 22.2; Badillo*, 121 P.3d at 1093. As such, Plaintiffs should not be allowed to explain to the jury their version of the law of bad faith, and Plaintiffs' counsel should not be allowed to reference his/her personal view of Oklahoma bad faith law. Due to

the complexity and variety of issues that come with allegations of insurer bad faith, the court's instructions to the jury are invaluable. Therefore, any attempt by another source to usurp this authority must be prohibited.

> PROPOSITION II:     TESTIMONY BY WITNESSES OR COMMENTS BY COUNSEL REGARDING WHAT IS "FAIR," "REASONABLE" OR THE "RIGHT THING" TO DO ARE INADMISSIBILITY UNDER RULE 403.

Rule 402, FED.R.EVID., defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to a determination of the action more probable or less probable then it would be without the evidence." Rule 402. As one court has noted, "the competence of evidence in the end depends upon whether it is likely, all things considered, to advance the search for the truth." *U.S. v. Krulewitch*, 125 F.2d 76, 80 (2d Cir. 1944). Even if a party can show that deceptive evidence satisfies the requirements of Rule 401, the admissibility included does not end there." Rule 403 provides that even relevant evidence may still be excluded if its probative value is outweighed by its prejudicial effects. *See* Rule 403. Simply put, "[o]nce relevance has been determined . . . the District Judge must balance the probative value of and then move forward the evidence against the harm likely to result from its admission." *Stoley v. Bridge Stone/Fire Stone, Inc.*, 106 F.3d 1504, 1512 (10th Cir. 1997) (internal citations and quotations omitted); *see also Bierman v. Aramark Refreshment Serv., Inc.*, 2008 OK 21, ¶ 17, 108 P.3d 877.

Defendant anticipates the parties will request the Court instruct the jury with Oklahoma Uniform Jury Instruction – Civil – Instruction 22.2. This instruction states:

[Plaintiff] claims that [The Insurer] violated its duty of good faith and fair dealing by **unreasonably, and in bad faith**, refusing to pay Plaintiff the proper amount for a valid claim under the insurance policy. In order for Plaintiff to recover damages in this case, she must show by the greater weight of the evidence that:

1. [The Insurer] was required under the insurance policy to pay Plaintiffs' claim;

2. [The Insurer's] refusal to pay the claim in full was unreasonable under the circumstances, because [for example, that 1) it did not perform a proper investigation, 2) it did not evaluate the results of the investigation properly, 3) it had no reasonable basis for the refusal, or 4) the amount it offered to satisfy the claim was unreasonably low];

3. [The Insurer] did not deal fairly and in good faith with [Plaintiffs]; and

4. The violation by [The Insurer] of its duty of good faith and fair dealing was the direct cause of the injury sustained by Plaintiffs.

Oklahoma Uniform Jury Instructions – Civil – Instruction 22.2.

As can be seen, the terms "unreasonable," "unfairly," and "bad faith" are used almost synonymously in the above jury instruction. Similarly, cases such as *Badillo* and *Christian* further demonstrate the terms "fair" and "good faith" are used synonymously to describe the insurer's legal duties to its insureds, e.g., the **duty** to deal **fairly** and in good faith. *See Badillo*, 2005 OK 48, ¶ 26, 121 P.3d at 1093; *Christian*, 1977 OK 141, 577 P.2d at 901. Thus, allowing any testimony or argument that references these or similar phrases and standards is the same as telling the jury what verdict to reach. Said differently, to allow a witness (even an expert witness) to opine that a particular action (even a hypothetical course of action) by CSAA would be unfair to the insured is tantamount to telling the jury that

CSAA acted in bad faith. Such testimony does not assist the jury and, in fact, it usurps the authority of the court by instructing the jury on the law, albeit indirectly.

Simply put, if any arguments and/or this type of testimony is offered at trial, the jury will naturally conclude CSAA has acted in bad faith. Oklahoma's bad faith standard is set by the law. The anticipated questions asked by Plaintiffs' counsel are designed to instruct the jury on the law and elicit legal conclusions which are intended to tell the jury what verdict to reach.

## NO. 4

### *INADMISSIBILITY OF EVIDENCE OF RESERVES SET BY CSAA*

CSAA moves this Court for an Order *in Limine* prohibiting the Plaintiffs, Plaintiffs' counsel, and/or Plaintiffs' witnesses, including expert witnesses, from mentioning or referring to, in any manner, the reserve set by CSAA on Plaintiffs' claim.

CSAA uses a variety of reserves, e.g., statutory reserves, indemnity reserves, expense reserves, claim reserves, *etc*. During the pendency of this claim, CSAA set various reserves, but these reserves did not reflect CSAA's evaluation of the claim. Rather, CSAA was addressing requirements imposed by insurance departments of the various states, as well as CSAA's own internal controls, related to both first and third-party claims. Typical state statutes require that reserves be set to encompass a multitude of factors including the costs of adjustment and settlement of claims. Reserves often include expenses for independent medical examinations and other claims handling costs that are required in the handling of third-party liability and workers' compensation claims and, to that extent, can be unrelated

to the value of the claim.  Moreover, State Insurance Department regulations focus upon the

preservation of an insurer's financial condition and stability and the requirement that insurers

set aside reserves for future losses. *In re Couch*, 80 B.R. 512, 517 (S.D. Cal. 1987), the court

explained, "[t]he legislature and Insurance Commissioner establish reserve policy. For this

reason alone, a reserve cannot accurately or fairly be equated with an admission of liability

or the value of any particular claim." *Id.*, citing *Union Carbide Corp. v. Travelers Indem.

Co.*, 61 F.R.D. 411, 413 (W.D. Pa. 1973) ("The contingent and uncertain nature of reserves"

might make questions regarding them tantamount to hypothetical questions.").

> Internal reserves established by an insurance company are an
> estimate of potential liability in connection with a claim. They
> do not represent the insurer's judgment as to what a plaintiff
> should recover. *See generally, Signature Dev. Cos. v. Royal Ins.
> Co. Of Am.*, 230 F.3d 1215, 1224 (10th Cir. 2000) (Reserve
> calculations are "merely an amount [the insurer] set aside to
> cover potential future liabilities.").... As such ... the evidence as
> to the difference between defendant's reserve for this claim and
> its payments on the claim does not support an inference of bad
> faith.

*LeBlanc v. Travelers Home and Marine Ins. Co.*, 10-CV-503-He, Dkt. No. 186, WL

2748616, at *4 (W.D. Okla. July 13, 2011). "[A] reserve essentially reflects an assessment

of the value of the claim taking into consideration the likelihood of an adverse judgment.

Such estimates of potential liability do not normally entail an evaluation of coverage based

upon a thorough factual and legal consideration when routinely made as a claim analysis."

*Bondex Int'l, Inc. v. Hartford Acc. & Indem. Co.*, No. 1:03CV1322, 2006 WL 355289, at *2

(N.D. Ohio Feb. 15, 2006), *quoting Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 139

F.R.D. 609, 613 (E.D. Pa. 1991), on reconsideration in part, No. CIV. A. 88-9752, 1991 WL

237636 (E.D. Pa. Nov. 7, 1991).

Reserves simply do not evidence an admission of coverage, fault, or liability by the

insurer.

> Because reserves are established for accounting reporting
> purposes, they should not be used against insurers to establish
> liability or damages. Forcing insurers to produce reserves in bad
> faith litigation would chill accurate claim evaluations. The
> weight of authority holds that reserves are not discoverable.

§ 7:27.Discovery issues – Reserve information, 1 Practical Tools for Handling Insurance

Cases § 7:27 (emphasis in original).  *See, e.g., First Horizon Nat'l Corp. v. Houston Cas.

Co.*, No. 2:15-cv2235-SHL-dkv, 2016 WL 5869580, at *15 (W.D. Tenn. Oct. 5, 2016) ("The

reserves set up by the [d]efendants are a business judgment and do not reflect a legal

determination of the validity of the [p]laintiffs' claim against them."); *Graham & Co., LLC

v. Liberty Mut. Fire Ins. Co.*, Case No.: 2:14-cv-02148-JHH, 2016 WL 1319697, at *6 (N.D.

Ala. Apr. 5, 2016) (joining "with the majority view in first-party claims 'that reserve

information is outside the scope of discovery because the information is not relevant as to

what an insurer thought of the merits of a claim'"); *Mine Safety Appliances Co. v. N. River

Ins. Co.*, Civ. A. No. 2:09-cv-00348-DSC, 2012 WL 12930363, at *3 (W.D. Pa. Mar. 14,

2012) (concluding that reserve information was neither relevant nor reasonably calculated

to lead to the discovery of admissible evidence where it would supposedly evidence the

existence of coverage and the plaintiff's bad faith claim was grounded in the insurer's

allegedly wrongful denial of coverage); *U.S. Fire Ins. Co. v. City of Warren*, No.

2:10-CV13128, 2012 WL 1454008, at *10 (E.D. Mich. Apr. 26, 2012)(explaining that a reserve "does not reflect a legal determination of the validity of an insured's claim"); *Cummins v. Ace Am. Ins. Co.*, No. 1:09-cv-00738-JMS-DML, 2011 WL 130158, at *12 (S.D. Ind. Jan. 14, 2011) ("Because of the business risk and regulatory compliance considerations involved in the setting of loss reserves, loss reserves ... are not synonymous with, and may not be particularly probative of, an [i]nsurer's opinion on the true value of a particular claim or on coverage."); *Bondex Int'l, Inc. v. Hartford Acc. & Indem. Co.*, No. 1:03CV1322, 2006 WL 355289, at *3 (N.D. Ohio Feb. 15, 2006)("[E]vidence of the amount of reserves is not relevant because it is not necessarily based on a full knowledge of the facts and the law of the case ... [but] most often reflects a business decision."); *Spearman Industries, Inc. v. St. Paul Fire and Marine Ins. Co.*, 128 F. Supp. 2d 1148, 1155 (N.D. Ill. 2001) (reserves are irrelevant and not probative); *Fid. & Dep. Co. of Md. v. McCulloch*, 168 F.R.D. 516, 525 (E.D. Pa. 1996) (stating that "setting aside reserves does not amount to an admission of liability"); *Cont'l Ins. Co. v. Beecham, Inc.*, 836 F. Supp. 1027, 1047 n.12 (D.N.J. 1993) ("The mere setting of a reserve by an insurer does not have the probative force of an admission."); *American Protection Ins. Co. v. Helm Concentrates, Inc.*, 140 F.R.D. 448, 449-50 (E.D. Cal. 1991) (reserves are irrelevant and not probative); *Indep. Petrochem. Corp. v. Aetna Cas. & Sur. Co.*, 117 F.R.D. 283, 288 (D.D.C. 1986) ("a reserve essentially reflects an assessment of the value of a claim taking into consideration the likelihood of an adverse judgment and that such estimates of potential liability do not normally entail an evaluation of coverage based upon a thorough factual and legal consideration when routinely made as

a claim analysis."); *Sunahara v. State Farm Mut. Auto. Ins. Co.*, 280 P.3d 649, 656 (Colo. 2012) ("Reserves are not an admission or valuation by the insurer; rather, they fulfill the insurance company's statutory obligations and reflect the insured's estimated potential liability on a particular claim."); *Hoechst Celanese Corp. v. Nat'l Union Fire Ins. Co.*, 623 A.2d 1099, 1109-10 (Del. Super. Ct. 1991) ("Reserves are accounting entries which an insurance company regularly uses to set aside sufficient funds in the event of policyholder liability…Reserves do not represent an admission or evaluation of liability and are irrelevant to the issues between insurer and insured…"[Insurers] might choose to set aside funds for the purpose of paying for the underlying…claims without acknowledging the validity of those claims."); *Schierenberg v. Howell-Baldwin*, 571 N.E.2d 335, 337 (Ind. Ct. App. 1991) (refusing to permit the discovery of reserves because that evidence would not be admissible at trial), overruled on other grounds by *Richey v. Chappell*, 594 N.E.2d 443 (Ind. Ct. App. 1992).

Similarly, reserves are not evidence of settlement authority, or of the settlement or verdict value of a case. In *CR Operating Co. v. Great Am. Ins. Co. of N.Y.*, No. CIV-12-00715-HE, 2013 WL 12091068, at *8 (W.D. Okla. 9/27/13), Judge Heaton provided:

> Plaintiff argues that defendant unreasonably failed to settle--or 'low balled' the Plaintiff by not settling with them for the amounts which Great American 'reserved' in connection with this claim. Plaintiff's argument tries to turn the insurer's 'reserve' determination into something it is not .... Here, the insurers [sic] calculations were not an amount assigned to the claim for purposes of settlement, but rather were a reserve determination .... The evidence as to defendants' reserve determinations does not support an inference of bad faith.

11

*See, e.g., Cummins*, 2011 WL 130158, at *12; *Liberty Mut. Fire Ins. Co. v. APAC-Southeast, Inc.*, Civ. A. No. 1:07-CV-1516-JEC, at *11 (N.D. Ga. May 16, 2008) (explaining that reserves are not relevant to the settlement value of a case); *Lipton*, 56 Cal. Rptr. 2d at 349 (quoting treatise); *Sunahara*, 280 P.3d at 656; *Hoechst Celanese*, 623 A.2d at 1109-10; *Schierenberg*, 571 N.E.2d at 337; *Gaspard v. S. Farm Bureau Cas. Ins. Co.*, 155 So. 3d 24, 31 (La. Ct. App. 2014) (concluding that a reserve amount does not establish a reasonable payment value for purposes of determining whether an insurer should face penalties); *Miller v. Kenny*, 325 P.3d 278, 298 (Wash. Ct. App. 2014) (stating that a reserve "cannot be equated with settlement authority"); *see also* Steven Plitt & John K. Wittwer, *The Discoverability of Reserve Information in Bad Faith Cases*, 31 INS. LITIG. REP. 81, 81 (2009) ("Claim reserves are not a reflection of the value of a claim…The weight of authority holds that reserves are not discoverable." (footnote omitted)).

As such, evidence of CSAA's "reserve" for this claim does not support an inference of bad faith or is otherwise relevant to this matter.  Moreover, even if reserve information is discoverable, it should not be taken as an indication of its admissibility at trial. In the recent case of *Peden v. State Farm Mut. Auto. Ins. Co.*, No. 14-CV-00982-LTB-KLM, 2018 WL 3496735, at *8 (D. Colo. July 20, 2018), the court determined:

> Admitting evidence of an insurer's loss reserves could lead the jury to assume that amount was an internal valuation of the claim and/or an assessment of it[s] liability for settlement purposes. *Silva v. Basin W., supra*, 47 P.3d at 1189 (noting the "common misconception" that an insurer's loss reserves are the same as settlement authority when, in actuality, "[t]he main purpose of a loss reserve is to comply with statutory requirements and to reflect, as accurately as possible, the insured's potential liability")(emphasis in original), (quoting *Lipton v. Superior Court*, 56 Cal.Rptr.2d 341, 348-49 (1996)). Because a loss

reserve does not reflect an admission by the insurance company that a claim is worth a particular amount of money, they have limited usefulness as valuations of a claim at trial, and instead contain a high possibility of unfair prejudice against an insurer. *See Silva v. Basin W., supra*, 47 P.3d at 1189; *Seabron v. Am. Family, supra*, 862 F. Supp.2d at 1158 (finding that an insurer's loss reserve was discoverable based on the broad federal discovery rules). As a result, I conclude that the amount of State Farm's loss reserve in this case is not admissible as the danger of unfair prejudice outweighs any potential probative value under Rule 403.

*See also, Boardwalk Apartments, L.C. v. State Auto Prop. & Cas. Ins. Co.*, No. 11-2714-JAR, 2014 WL 2690150, at *3 (D. Kan. June 13, 2014), rev'd and vacated on other grounds, 816 F.3d 1284 (10th Cir. 2016) (excluding evidence regarding reserves based on prejudicial effect). Thus, in *Porter v. Farmers Insurance Company*, 2011 WL 1566018, *2-3 (N.D. Okla., April 25, 2011), the court allowed limited discovery of the personnel files of Farmers' claims examiners, but specifically held: "Nothing in this ruling should be interpreted as indicating such personnel file *or loss reserve information* is admissible at trial."

Similarly, in *Estate of Mali v. Federal Ins. Co.*, No. 3:06-cv-01475, 2011 WL 2516246 (D. Conn. 2011), evidence of loss reserves was precluded from admission into evidence based on Rule 403 balancing. First, the court held that the admission of such evidence would result in "the trial [being] diverted from the central issues in the case to a complicated inquiry into the nature, statutory and regulatory requirements for, and proprietary methods of establishing loss reserves." Additionally, the court found the evidence to be of low probative value because the allocation of a loss reserve was a highly variable and inexact science which was designed to protect only against potential losses, not a thorough factual and legal claim analysis designed to precisely value the claim. *See also, Bird v. Penn Central*

*Co.*, 61 F.R.D. 43, 47, 17 Fed. R. Serv. 2d 1402 (E.D. Pa. 1973) ("the probative value of the reserves, as applied to this case, is substantially outweighed by its prejudicial aspects"); *Light v. Allstate Ins. Co.*, 48 F. Supp. 2d 615, 619 (S.D. W. Va. 1998). In *American Medical Systems, Inc. v. National Union Fire Ins. Co. of Pittsburgh, Inc.*, 1999 WL 781495 (E.D. La. 1999) , the court ordered limited discovery of reserve information by requiring the insurer to reveal whether it established reserves over a particular time period, but did not order the insurer to produce the actual reserve amounts. *Id.* The court held that reserves are not intended to be a comprehensive evaluation of a claim, and forcing production of reserves, especially while the workers' compensation case is pending, would be highly prejudicial. *See also, Federal Realty Inv. Trust v. Pacific Ins. Co.*, 760 F. Supp. 533, 540 (D. Md. 1991) (holding that probative value of reserves, if any, was substantially outweighed by prejudicial aspects); *Union Carbide*, 61 F.R.D. at 413 ("The contingent and uncertain nature of reserves" might make questions regarding them tantamount to hypothetical questions.).

Admission of reserve information is highly prejudicial and confusing to a jury, given the fact that reserves have nothing to do with the analysis of CSAA's claims handler regarding the cause of loss or any amounts due under the policy.

## NO. 5

### *INADMISSIBILITY OF ANY SUGGESTION OR ARGUMENT BY PLAINTIFFS THAT CSAA SHOULD LOOK FOR REASONS TO PAY A CLAIM OR PAY MORE ON A CLAIM*

Defendant, CSAA, moves this Court for an Order *in Limine* instructing the Plaintiffs, Plaintiffs' counsel, and Plaintiffs' witnesses not to argue or suggest to the jury, in any manner, that CSAA should look "harder" for ways to pay a claim than to deny a claim. This

type of argument is tantamount to instructing the jury on the law and/or constitutes a legal conclusion. More importantly, it is an inaccurate statement of the law, and hence the danger in allowing this type of questioning or argument at the time of trial. It is the function of the Court – not the parties or their counsel – to educate the jury on the law.

Defendant anticipates Plaintiffs will ask CSAA's employees to confirm, by way of leading questions, that they have an obligation to look for reasons to pay a claim or to pay more on a valid claim – i.e., that they must devote more time and attention to finding a reason to pay a claim than to deny a claim. This type of questioning is improper because (1) it invades the province of the Court which, alone, must instruct the jury on the law, and (2) because this type of argument inaccurately states the law.

The reality is, Oklahoma law does not require first-party insurers, such as CSAA, to look "harder" for reasons to pay a claim than to deny a claim (or look "harder" for ways to pay more on a claim than to pay less on a claim). In fact, Oklahoma law is clear that a first-party insurer must conduct an <u>unbiased</u> investigation. *Beers v. Hillory v. Northland*, 241 P.3d 285, n. 9 (Okla. 2010); *McCoy v. Oklahoma Farm Bur.*, 841 P.2d 568, 569 (Okla. 1992). An unbiased investigation necessarily requires the first-party insurer to give <u>equal</u> consideration to the interests of its insured and itself. Thus, looking for reasons to pay a claim (or to pay more on a claim) is just as wrong as looking for reasons to deny a claim (or pay less on a claim). An unsophisticated lay person – *e.g.*, the jurors in this case – will not know what legal duties apply to CSAA in this case until they read the Court's instructions at the end of the case. The jury should not be misled by Plaintiffs and/or Plaintiffs' counsel

during the course of the trial into believing that CSAA had a legal obligation to actively search for reasons to pay Plaintiffs' claim or to pay more on their claim. This is not the law, and the Court will instruct the jury on the law in any event. If Plaintiffs are allowed to argue or insinuate in the presence of the jury that CSAA should look "harder" for reasons to pay a claim or to pay more money on a valid claim, the damage will be irreversible. CSAA will be unfairly prejudiced and the jury will be misled as a result.

For these reasons, CSAA respectfully requests this Court to enter an Order prohibiting Plaintiffs and Plaintiffs' counsel from asking questions along these lines or from making this type of argument at the time of trial in the presence of the jury.

## NO. 6

### *INADMISSIBILITY OF EVIDENCE OF CSAA'S PROFIT-SHARING PLAN*

CSAA moves this Court for an Order in Limine prohibiting the Plaintiffs, Plaintiffs' counsel, and/or Plaintiffs' witnesses from mentioning or referring to, in any manner, CSAA's profit-sharing plan. CSAA, like many companies that do business in the United States, including insurance companies, subscribes to an IRS-approved profit-sharing plan in which its employees, including claims examiners, participate.

Plaintiffs have not listed any witnesses on their Final Witness List to testify regarding this plan, and have not identified any exhibits on their Final Exhibit List that relate to this plan. Likewise, Plaintiffs have not endorsed any expert witnesses to testify that CSAA's profit-sharing plan compromises its ability to treat its insureds fairly and in good faith.

It is axiomatic that an insurance company like CSAA becomes profitable by paying what is owed. CSAA anticipates that Plaintiffs will attempt to offer evidence at trial of CSAA's profitsharing plan.  CSAA contributes to its employees' profit sharing plans. Upon information and belief, the same percentage of contribution applies to all employees.

Importantly, CSAA does not set goals for the reduction of claims paid. The salaries and profit-sharing contributions paid to claims representatives are not influenced by how much the representatives pay out on claims.  Plaintiffs may imply that insurance company claims personnel should not be allowed to participate in the company's profit-sharing plan because it creates a conflict of interest.  As Plaintiffs' argument usually goes, if a claims examiner believes profitability of the company might be increased if the claims examiner pays less on valid claims, then the claims examiner has incentive to pay less on valid claims in order to receive a larger contribution at the end of the fiscal year. Plaintiffs can offer no admissible evidence to support this theory.

As stated above, Plaintiffs cannot offer any testimony or evidence to demonstrate (1) that CSAA's claim examiners, who handled Plaintiffs' claim are of this particular mind set, (2) how much the examiners would have to decrease their payments on valid claims in order to realize any increase in contribution to their profit-sharing plans by CSAA, and (3) whether profitsharing contributions by an insurance company to its claims personnel are proper or improper.

An insurance company, like CSAA, cannot grow and be profitable if it pays less than what it owes its insureds.  Unhappy insureds tell others, cancel their insurance policies and find coverage elsewhere. This philosophy is ingrained in CSAA's claims personnel.

Presumably, Plaintiffs believe insurance company claims examiners should be treated as a separate class of employees, and "carved out" of the group of employees eligible for the company profit-sharing plan.  It is doubtful that such a scheme would ever be approved by the IRS, which regulates these types of employer-sponsored plans. Further, even if "carving out" claims personnel from the company profit-sharing plan is legal, it is highly unlikely that insurance companies would be able to attract and recruit qualified claims examiners, knowing they will not be eligible for the company's profit-sharing plan.

Additionally, CSAA believes Plaintiffs will attempt to use its profit-sharing plan to suggest it is somehow "wrong" or "evil" for CSAA to make a profit. This, of course, is utter nonsense.  As the United States District Court for the District of Arizona aptly explained:

> The evolution of the law of bad faith has not reached the point where it is wrong for an insurance company to make a profit, much less follow good business practices. For instance, having a round table discussion where more than one person evaluates the status of a claim is not a company acting in bad faith.  Additionally, a company keeping statistics on resolution of claims and looking to their "bottom line" are reasonable internal procedures; particularly when Plaintiff has offered no evidence that this behavior ever resulted in the denial of a legitimate (or illegitimate) claim.

*Knoell v. Met. Life Ins. Co.*, 163 F.Supp.2d 1072 (D. Ari. 2001).

With this in mind, it is not surprising that some federal district courts have found that information relating to a claim representative's profit-sharing contribution is not even discoverable. For example, in *Fullbright v. State Farm Mutual Auto. Ins. Co.*, 2010 WL 300436, at *5 (W.D. Okla. Jan. 20, 2010), this Honorable Court stated when addressing the discoverability of personnel files:

> The court finds that Plaintiffs have not presented sufficient justification to support obtaining information from personnel files regarding merit pay or related salary information. Plaintiffs speculate that adjusters' salaries are affected by the number of claims reduced or denied; however, that speculation is not sufficient to justify disclosure of personal and sensitive information contained in personnel files. Plaintiffs have also not provided justification for a review of disciplinary materials in an adjuster's personnel file; absent such justification, the court does not find such material reasonably calculated to lead to the discovery of admissible evidence.

2010 WL 300436, at *5.

Similarly, the United States District Court for the Southern District of Florida recently rejected similar conclusory arguments presented by the Plaintiff, stating:

> Feijoo's claims 'have dubious factual support' and 'even taken as true they only demonstrate that GEICO could have improved its claims process. *'Novoa*, 542 Fed.Appx. at 796. Feijoo's allegations of GEICO's focus on profit-sharing and incentives designed to minimize loss payments are examples of conclusory allegations that are insufficient to withstand a motion for summary judgment. *Cordoba*, 419 F.3d at 1181. Further, there is no record evidence showing that GEICO exhibited a 'conscious disregard or indifference to the rights of the insured. *'Francois v. Illinois Nat. Ins. Co.*, No. 01–CV–8070, 2002 WL 33760405, at *4 (S.D.Fla. Mar. 28, 2002).

*Feijoo v. Geico General Insurance Company*, 1:14-cv-24659-KMM, 2015 WL 5786740 (Sept. 30, 2015).

In the present case, CSAA does not provide incentive-based bonuses to its claims examiners based on the amount of claims denied or money saved. CSAA's profit-sharing plan provides additional compensation to its employees, on the same percentage basis, irrespective of the employees' performance.  The plan is based exclusively on the profitability of the company during a given fiscal year.  Plaintiffs can offer no evidence that CSAA's profit-sharing plan is based on performance of the claims examiners or incentive-based.

Evidence of CSAA's profit-sharing plan will inevitably mislead the jury and result in unfair prejudice to CSAA, and should therefore be excluded pursuant to Rule 403, FEDERAL RULES OF EVIDENCE.

## NO. 7

### *INADMISSIBILITY OF ANY SUGGESTION OR ARGUMENT BY PLAINTIFFS THAT CSAA OWES THE "BENEFIT OF THE DOUBT" TO ITS INSURED*

Defendant, CSAA, moves this Court for an Order *in Limine* prohibiting the Plaintiffs, Plaintiffs' counsel, and Plaintiffs' witnesses from mentioning, referring to, arguing or suggesting to the jury, in any manner, that CSAA is required to give the "benefit of the doubt" to its insured when handling claims.  Whether or not CSAA owes a duty to its insured to give it the "benefit of the doubt" is a question of law for the Court, and the Court can instruct the jury accordingly if it desires.  Further, as demonstrated below, the argument that a first-party insurer, such as CSAA, owes its insured the "benefit of the doubt" is an erroneous understanding of Oklahoma law.  Such argument, if allowed, will result in unfair prejudice to CSAA and will mislead the jury.

The Oklahoma Supreme Court first recognized the tort of bad faith in *Christian v. American Home Assur. Co.*, 522 P.2d 899, 1977 OK 141.  "[A]n insurer has an implied duty to deal fairly and act in good faith with its insured and . . . the violation of this duty gives rise to an action in tort." *Id.* at 904.  The duty of good faith does not require an insurer to pay every claim made by an insured or to give the insured the "benefit of the doubt."

> We recognize that there can be disagreements between insurer and insured on a variety of matters such as insurable interest, extent of coverage, cause of loss, amount of loss, or breach of policy conditions.  Resort to a judicial forum is not per se bad faith or unfair dealing on the part of the insurer regardless of the outcome of the suit. Rather, tort liability may be imposed only where there is a clear showing that the insurer unreasonably, and in bad faith, withholds payment of the claim of its insured.

*Id.* at 905.  *Barnes v. Oklahoma Farm Bureau Mut. Ins. Co.*, 2000 OK 55 ¶21, 11 P.3d 162, 171 ("a decision to withhold or delay payment, if based on a legitimate dispute or reasonable justification (legal or factual) cannot form the basis of bad faith tort liability"); *Garnett v. Government Employees Ins. Co.*, 186 P.3d 935, 944 (Okla. 2008) ("It is not breach of the duty of good faith for an insurer to resort to the judicial forum to settle legitimate disputes as to the validity or amount of an insurance claim.").

Insurance companies may make business decisions to give their insured the "benefit of the doubt" in certain situations or make payments as a courtesy to their insureds. However, as explained above, first-party insurers are not required under Oklahoma law to do so.  To allow Plaintiffs to interrogate witnesses regarding this so-called duty is to allow Plaintiffs to instruct the jury on the law and, thus, invade the province of the Court. Of course, if Plaintiffs are going to attempt to educate the jury on the law, Plaintiffs should be

accurate in that regard.  To suggest to the jury that a first-party insurer, such as CSAA, must or should give its insured the benefit of the doubt, is an erroneous characterization of the law. Moreover, whether an insurance company should make the business decision to give its insured the benefit of the doubt is completely irrelevant because, again, it is not required to do so under the law.

CSAA has no legal obligation to give Plaintiffs the "benefit of the doubt."  If this type of question is allowed to be asked of any of the Defendant's claims examiners at trial, they will be forced to recite Oklahoma law, referenced above, and educate the jury on CSAA's defense that a "legitimate dispute" is a legal bar to a bad faith claim.

For these reasons, this Court should enter an order prohibiting Plaintiffs from making these types of suggestions or arguments at the time of trial.  If Plaintiffs do so, the damage will be irreversible, even if this Court should immediately sustain CSAA's objection.

Respectfully submitted,

s/ Gerard F. Pignato
Gerard F. Pignato, OBA No. 11473
Bruce A. Robertson, OBA No. 13113
Matthew C. Kane, OBA No. 19502
Susan F. Kane, OBA No. 19455
RYAN WHALEY COLDIRON JANTZEN
 PETERS & WEBBER PLLC
400 North Walnut Avenue
Oklahoma City, Oklahoma  73104
Telephone:   405-239-6040
Facsimile:   405-239-6766
Email:   jerry@ryanwhaley.com
          brobertson@ryanwhaley.com
          mkane@ryanwhaley.com
          susanfkane@gmail.com
ATTORNEYS FOR DEFENDANT

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 7, 2020, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing.  Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

      Steven S. Mansell, Esquire
      Mark A. Engel, Esquire
      Kenneth G. Cole, Esquire
      M. Adam Engel, Esquire
      Keith F. Givens, Esquire
      MANSELL ENGEL & COLE

                        s/ Gerard F. Pignato
                        For the Firm