IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

RUSS GODFREY and )
NATALIE GODFREY, )
 )
    Plaintiffs, )
 )
 )    Case No. CIV-19-329-G
CSAA FIRE & CASUALTY )
INSURANCE COMPANY, )
a foreign corporation, )
 )
    Defendant. )

### DEFENDANT'S TRIAL BRIEF

Defendant CSAA Fire & Casualty Insurance Company ("CSAA") respectfully submits this Trial Brief regarding issues pertinent to the upcoming trial proceedings. In sum, Plaintiffs cannot prove: (1) any breach of the policy, as wear and tear damages to Plaintiffs' roof existed, even if they were not the exclusive cause of the leak; (2) any bad faith as CSAA's determination that wear and tear was a cause was reasonable; (3) any bad faith as Plaintiffs did not suffer any damages attributable to CSAA's purported bad faith conduct; and (4) any bad faith as a result of a failure to investigate, as the virtually exclusive basis for the bad faith claim is predicated on a report from the investigation and no additional investigation would affect CSAA's determination.

In addition, CSAA anticipates making a Rule 50 motion at the close of Plaintiffs' case.[1] CSAA believes the matters addressed herein are directly pertinent to such a motion, providing relevant argument and authority supportive of its position.

---

[1] Fed.R.CivP. 50(a) provides in pertinent part:

I.   **NO BREACH OF CONTRACT**

Plaintiffs seek payment under the policy at issue for damages related to a roof leak. CSAA agreed that interior damage was covered, although such damage was less than the policy deductible. CSAA determined, however, that the roof itself was not a covered loss because it was the result, at least in part, of wear and tear and deterioration of the roof.

The policy explicitly provides:

> We do not insure for any loss caused directly or indirectly by one or more of the excluded events set forth below in Exclusions A.1. through A.11., regardless of: (1) the cause of the excluded event; (2) other causes of the loss; (3) whether or not the other causes of the loss acted concurrently or in any sequence with the excluded event to produce the loss; (4) whether the loss occurs suddenly or gradually or involves isolated or widespread damage; (5) whether the loss arises from natural or external forces; or (6) whether the loss occurs as a result of any combination of (1) through (5).

CSAA_GODFREY 00617-618. The exclusions referenced in this paragraph include "wear and tear, marring, deterioration." CSAA_GODFREY 00611.

"Under Oklahoma law, '[i]nsurance policies are contracts and they should be construed as every other contract−according to its terms where it is not ambiguous.'" *Inks v. USAA Gen. Indem. Co.*, No. 17-CV-00210-GKF-FHM, 2018 WL 3589116, at *4 (N.D.

---

(1) *In General.* If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
  (A) resolve the issue against the party; and
  (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.
(2) *Motion.* A motion for judgment as a matter of law may be made at any time before the case is submitted to the jury. The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment.

Okla. June 27, 2018), *quoting Equity Ins. Co. v. City of Jenks*, 2008 OK 27, 184 P.3d 541, 544. "To recover for breach of contract, a plaintiff must establish: '(1) the formation of a contract, (2) breach of the contract, and (3) damages as a result of that breach.'" *Id., quoting Cates v. Integris Health, Inc.*, 2018 OK 9, 412 P.3d 98. In light of such considerations, courts applying Oklahoma law have examined a substantially similar policy provision and determined that it is clear, unambiguous and binding on the parties.

> [T]he "lead-in clause" immediately preceding that exclusion…provides, in pertinent part, "[w]e do not insure for such loss *regardless of:* (a) *the cause* of the excluded event; or (b) *other causes* of the loss; or (c) *whether other causes acted concurrently or in any sequence* with the excluded event to produce the loss." (Emphasis added.)
> \*\*\*
> Oklahoma law governing insurance coverage disputes is well-established. The foremost principle is that an insurance policy is a contract. Parties are at liberty to contract for insurance to cover such risks as they see fit and they are bound by terms of the contract. It necessarily follows that courts are not at liberty to rewrite the terms of an insurance contract. The interpretation of the policy, with its exclusions, is a law question, unless the facts necessary to apply the decided law question are in dispute. *Wiley v. Travelers Insurance Company,* 1974 OK 147, 534 P.2d 1293.
> \*\*\*
> After a careful review of the policy and consideration of *Max True Plastering Co.,* we conclude that the language of the lead-in clause to the earth movement exclusion is unambiguous. The only fair construction of that paragraph is that when more than one cause is involved in a loss which includes one of the excluded events named under the lead-in clause, in this case, earth movement, there is no coverage regardless of whether the causes acted concurrently or in any sequence with the excluded event. Further, like the exclusion in *Spears v. Shelter Mutual Insurance Company,* 2003 OK 66, 73 P.3d 865, the lead-in clause of the earth movement exclusion is neither masked by technical or obscure language nor hidden in the policy…

*Duensing v. State Farm Fire & Cas. Co.*, 2006 OK CIV APP 15, ¶¶ 17-21, 131 P.3d 127, 133–34; *see also Davis-Travis v. State Farm Fire & Cas. Co.*, 336 F. App'x 770, 772 (10th Cir. 2009) (applying and quoting pertinent portions of *Duensing*).

3

Plaintiffs' roofer, and Mr. Godfrey himself, plainly acknowledge that the roof in question suffered from "wear and tear, marring, deterioration."

> Q   Do you see signs of wear and tear on that roof in any one of those photos on that page?
>
> A   I saw signs of wear and tear on this roof.
>
> Q   Okay. And deterioration?
>
> A   Yeah. Natural -- yeah.

A. Lippoldt Deposition, **Exhibit 3,** 64:4-8.

> Q   Okay. What do you recall about the condition of the roof overall? And I'm not talking about the sloped roof. I'm talking about the flat roof. Do you recall seeing quite a bit of wear and tear and deterioration?
>
> MR. GIVENS:   Object to the form.
>
> A   THE WITNESS:   There was some age to it, but there was also -- I don't see the photos, but there were also holes in the membrane. Like it was an older roof.

A. Lippoldt Deposition, **Exhibit 3,** 63:2-11.

> Q   You would expect a roof to experience some wear and tear over the course of seven years; correct?
>
> A   Well, yeah. It's outside.
>
> Q   Yeah. And a seven-year roof isn't as good as a brand-new roof; correct?
>
> A   Yeah. I would say so.

R. Godfrey Deposition, **Exhibit 1**, 25:21-26:2.

No evidence Plaintiffs can proffer will change the fact that wear and tear exists and that such contribution to the loss negates coverage, regardless of wind or ice damming as a concurrent cause.

## II.    NO BAD FAITH CONDUCT

The Oklahoma Supreme Court first recognized the tort of bad faith in *Christian v. American Home Assur. Co.*, 1977 OK 141, 577 P.2d 899.  "[A]n insurer has an implied duty to deal fairly and act in good faith with its insured and . . . the violation of this duty gives rise to an action in tort." *Id*. at 904. The duty of good faith does not require an insurer to pay every claim made by an insured, and there may be valid disagreements between the parties.  *Id.* at 905. *See also Badillo v. Mid Century Ins. Co.,* 2005 OK 48 ¶ 28, 121 P.3d 1080, 1093 ("[t]he essence of an action for breach of the duty of good faith and fair dealing 'is the insurer's unreasonable, bad-faith conduct'"); *Skinner v. John Deere Ins. Co.*, 2000 OK 18, ¶ 17, 998 P.2d 1219, 1223 (recognizing that insurer "acted reasonably as a matter of law and, thus, summary judgment was proper"); *Navarez v. State Farm Mut. Auto. Ins. Co.,* 1999 OK CIV APP 92 ¶13, 989 P.2d 1051, 1053 (citing *McCorkle v. Great Atlantic Insurance Co.*, 1981 OK 128, 637 P.2d 583) ("The essence of the tort of bad faith, as it is recognized in Oklahoma, is the unreasonableness of the insurer's actions").

> The elements of a bad faith claim against an insurer for delay in payment of first-party coverage are: (1) claimant was entitled to coverage under the insurance policy at issue; (2) the insurer had no reasonable basis for delaying payment; (3) the insurer did not deal fairly and in good faith with the claimant; and (4) the insurer's violation of its duty of good faith and fair dealing was the direct cause of the claimant's injury.  ***The absence of any one of these elements defeats a bad faith claim.***

*Ball v. Wilshire Ins. Co.*, 2009 OK 38, ¶ 21, 221 P.3d 717, 724 (emphasis added); *see also, 4100 Perimeter Ltd. P'ship v. Hartford Cas. Ins. Co.*, No. CIV-14-0641-HE, 2015 WL 5008410, at *3 (W.D. Okla. Aug. 20, 2015), *citing Badillo v. Mid Century Ins. Co.,* 121 P.3d 1080, 1093 (Okla.2005).

*Badillo,* 121 P.3d at 1094, also clarified that "bad faith" requires a showing of "more than simple negligence." This point was recently reiterated by the Oklahoma Supreme Court when it held that "a party prosecuting a claim of bad faith carries the burden of proof and must plead all of the elements of an intentional tort." *Garnett v. Government Employees Ins. Co.*, 2008 OK 43, 186 P.3d 935, 944. Thus, to prove a *prima facie* case of bad faith against CSAA, Plaintiffs must establish more than just a mistake or negligence.

As stated in *City National Bank and Trust Co.* v. *Jackson National Life Insurance,* 1990 OK CIV APP 89, ¶ 18, 804 P .2d 463, 468: "We therefore hold that before the issue of insurer's alleged bad faith may be submitted to the jury, the Trial Court must first determine, *under the facts of the particular case* and as a matter of law, whether insurer's conduct may be reasonably perceived as tortious." (Emphasis added). "[T]o establish such a claim, the insured must present evidence from which a reasonable jury could conclude that the insurer did not have a reasonable good faith belief for [its determination]." *Houchin v. Hartford Life Ins. Co.*, No. CIV-14-522-D, 2016 WL 502075, at *6 (W.D. Okla. Feb. 8, 2016), citing *Oulds v. Principal Mut. Life Ins. Co.*, 6 F.3d 1431, 1436 (10th Cir. 1993) and *McCoy v. Okla. Farm Bureau Mut. Ins. Co.*, 1992 OK 43, 841 P.2d 568, 572.

**A.  No Breach of Contract Means No Bad Faith in the Instant Litigation.**

Determining whether an insurer committed bad faith concerns an examination of the conduct of the insurer with respect to the particular insurance claim at issue over the time period when the insurer was requested to perform its contractual obligation to the insured. That is because the decisive question is whether the insurer "had a good faith

belief, at the time its performance was requested, that it had a justifiable reason for withholding payment under the policy." *Buzzard* v. *McDaniel,* 1987 OK 28, ¶ 10, 736 P.2d 157, 159.

> "A central issue in any analysis to determine whether breach has occurred is gauging whether the insurer had a good faith belief in some justifiable reason for the actions it took or omitted to take that are claimed violative of the duty of good faith and fair dealing." *Id.* at 1093-94. "Where an insurer has demonstrated a reasonable basis for its actions, bad faith cannot exist as a matter of law." *Beers v. Hillory*, 241 P.3d 285, 293 (Okla. Civ. App. 2010); *see also Barnes v. Okla. Farm Bureau Mut. Ins. Co.*, 11 P.3d 162, 170-71 (Okla. 2000) ("[B]ad faith cannot exist if an insurer's conduct was reasonable under the circumstances.").

*Inks v. USAA Gen. Indem. Co.*, No. 17-CV-00210-GKF-FHM, 2018 WL 3589116, at *6 (N.D. Okla. June 27, 2018).

As discussed above, the policy explicitly provides that, if an excluded cause is one of any number of causes of the damage, the loss is not covered. Wear and tear damage is expressly excluded. Even if CSAA was ultimately wrong (which CSAA contests), Plaintiffs concede that there is wear and tear damage to the roof. It simply is not unreasonable for CSAA to conclude that the obvious wear and tear damage is at least one cause of the leak. Thus, Plaintiff's bad faith claim cannot stand.

### B.   No Bad Faith Damages Means No Bad Faith Claim.

Among the various elements required to establish bad faith, Plaintiff must prove the existence of damages. *See e.g.,* Defendant's Proposed Jury Instruction No. 17, submitted contemporaneously herewith ("That the violation by Defendant of its duty of good faith and fair dealing was the direct cause of the ***injuries*** sustained by the Plaintiffs, if any."); *see also* OUJI-Civ. No. 22.2 (including as an element of bad faith "the injury sustained by

7

[Plaintiff]."); OUJI-Civ. No. 22.3 (same); *Inks v. USAA Gen. Indem. Co.,* No. 17-CV-00210-GKF-FHM, 2018 WL 3589116, at *6 (N.D. Okla. June 27, 2018), *quoting Ball v. Wilshire Ins. Co.,* 2009 OK 38, 221 P.3d 717, 724. In fact, the comments to OUJI-Civ. No. 22.4, which enumerates bad faith damages, provide: "Any elements of damages that are not supported by the evidence should be omitted from the instruction."

Defendant also learned of the complete absence of Plaintiffs' understanding of their bad faith claim and lack of any related damages on the part of Plaintiffs. Russell Godfrey testified:

> Q      You've asserted a bad faith claim against Triple A, correct?
>
> A      Yes.
>
> Q      What does bad faith mean to you?
>
> A      Well, just that they were -- they were negligent. They had facts, pictures, people out there on the roof that told them that damage was caused by the storm and they denied the claim for -- I don't know why.

R. Godfrey Deposition, 42:4-12, **Exhibit 1**.

Similarly, Natalie Godfrey stated:

> Q      In your mind, what does bad faith mean?
>
> A      In my mind, is that we paid our premiums every month like we were supposed to, that we put the care of our property in your hands and then whenever we had an issue that -- weather-related issue that should have been covered, and it was denied.

N. Godfrey Deposition, 50:6-12, **Exhibit 2**.

As to harm purportedly suffered as the result of the alleged bad faith conduct of Defendant, Russell Godfrey stated:

> Q   Did you suffer any other financial losses that were separate and apart from the benefits you claim are owed under the contract?
>
> A   No.
>
> Q   Any financial damages specific to the handling of the claim, other than repairs to the roof?
>
> A   Other financial damages?
>
> Q   Financial damages.
>
> A   No. Just having to take out the loan and stuff.
>
> Q   No loss of income?
>
> A   No.

R. Godfrey Deposition, 47:20-48:7, **Exhibit 1**.

> Q   Did you seek any counseling, therapy, or speak to any clergy, therapist or doctor?
>
> A   No.
>
> Q   Are you claiming any mental pain and suffering?
>
> A   No.
>
> MR. GIVENS: Object to the form.

R. Godfrey Deposition, 49:1-8, **Exhibit 1**.

> Q   And I understand that you are not happy with the way this claim was handled, but you're always going to be put out in some way in a situation where a roof is leaking.
>
> A   Uh-huh.
>
> Q   Do you agree?
>
> A   Yes.

> Q    Okay. Are you claiming you suffered embarrassment?
>
> A    No.
>
> Q    Are you claiming a loss of reputation?
>
> A    No.

R. Godfrey Deposition, 49:22-50:8, **Exhibit 1**.  Similarly, Natalie Godfrey admitted:

> Q    Other than damages to the interior or the roof, did you suffer any other financial damages?
>
> A    Not that I'm aware of.
>
> Q    Okay. Did you suffer any financial damages specific to the handling of the claim rather than the repair costs?
>
> A    I don't know.
>
> Q    What other financial damages are you alleging besides repair costs already discussed regarding the roof and the interior?
>
> A    I don't know.
>
> Q    Any loss of income?
>
> A    Well, we're self-employed.
>
> Q    Okay. So did you lose any income due to the handling of this claim?
>
> A    I don't know. I mean, a person would have to be off work to go over there to do that stuff, but I don't know how much income you can assign to that.
>
> Q    Okay. You stated before that you left all of this to your husband; correct?
>
> A    Correct.

N. Godfrey Deposition, 59:10-60:7, **Exhibit 2**.

> Q    Okay. Have you sought any counseling, therapy --
>
> A    No. I'm sorry.

> Q      That's okay. Counseling, therapy or spoken to any clergy, therapist or doctor regarding emotional distress?
>
> A      No.
>
> Q      Or any other -- have you gone to any counseling, therapy or spoken to a clergy, therapist or doctor about the handling of this claim?
>
> A      No.

N. Godfrey Deposition, 61:2-12, **Exhibit 2**.

> Q      Are you claiming you suffered embarrassment?
>
> A      Embarrassment, no.
>
> Q      Are you claiming a loss of reputation?
>
> A      No.

N. Godfrey Deposition, 62:10-14, **Exhibit 2**.

Indeed, Plaintiffs admitted that the mental suffering they did claim to have experienced was something that was the result of the harm to the home itself rather than anything unique to the handling of their insurance claim. R. Godfrey Deposition, 49:13-50:4, **Exhibit 1**; N. Godfrey Deposition, 61:21-62:9, **Exhibit 2**. Additionally, Ms. Godfrey had no interaction with CSAA, and Mr. Godfrey's was minimal, as Allen Lippoldt, their roofer, acted in their behalf in communicating with CSAA during the claims handling process.

> Q      After Allen Lippoldt became involved, did you speak to Triple A again? Or did you just leave it to Allen Lippoldt?
>
> A      I think I just left it with him. But again, you know, I can't –
>
> Q      After Allen Lippoldt became involved, did you allow Allen to speak for you –

>   A       Yes.
>
>   MR. GIVENS: Object to the form.
>
>   Q       -- with Triple A?
>
>   THE WITNESS: Yes.

R. Godfrey Deposition, 36:2-11, **Exhibit 1**.

>   Q       Was it your understanding Ultimate Roofing would be contacting the insurance company for you on this claim?
>
>   A       Yeah. Allen Lippoldt, yes.
>
>   Q       Okay. So when they -- when Ultimate Roofing contacted Triple A, they were doing that for you in order to facilitate the claim?
>
>   A       Yes.

R. Godfrey Deposition, 37:5-12, **Exhibit 1**; *see also* N. Godfrey Deposition, 41:21-42:1 ("Russell handled the roof thing."); 46:7-9 (stating she never spoke to CSAA about the claim), **Exhibit 2**.

In sum, Plaintiffs cannot prove the elements necessary for a bad faith claim because they have suffered no damages as a result of Defendant's alleged misconduct.

**C.  No Evidence that a More Thorough Investigation would Make a Difference.**

Included among Plaintiffs' generic allegations of bad faith is a claim that CSAA acted improperly in investigating Plaintiffs' claims. Specifically, Plaintiffs contend that Defendant "violated its duty or [sic] good faith and fair dealing by: (a) failing to conduct an [sic] fair or adequate investigation into the cause and extent of Plaintiffs loss from storm damage inflicted upon his roof." Plaintiffs' Responses to CSAA's Discovery, Response to Interrogatory No. 11. Despite such language, Plaintiffs are not genuinely disputing the

investigation itself. In fact, they rely almost exclusively on the independent inspection report, which provided that the leak was the result of a covered loss, while the CSAA adjuster ultimately denied the claim based on wear and tear, an excluded cause.

Regardless, Plaintiffs have no evidence that a more thorough investigation would result in a different outcome.

> "Under Oklahoma law, ... an insurer's investigation need only be reasonable, not perfect." *Roberts v. State Farm Mut. Auto. Ins. Co.*, 61 F. App'x 587, 592 (10th Cir. 2003) (unpublished) (citing *Buzzard*, 824 P.2d at 1109).[11] Accordingly, " 'when a bad faith claim is premised on inadequate investigation, the [claimant] must make a showing that material facts were overlooked or that a more thorough investigation would have produced relevant information' that would have delegitimized the insurer's dispute of the claim." *Bannister*, 692 F.3d at 1128 (quoting *Timberlake*, 71 F.3d at 345). "[E]vidence of inadequate investigation must 'suggest a sham defense or an intentional disregard of uncontrovertible facts' in order to be put to a jury." *Id.*; *see also Oulds*, 6 F.3d at 1442.

*Shotts v. GEICO Gen. Ins. Co.*, 943 F.3d 1304, 1317 (10th Cir. 2019). As a result, Plaintiffs' bad faith claim predicated on CSAA's investigation, even if it survived the lack of any element of damages, should not be presented to the jury.

## CONCLUSION

In summary, Plaintiffs simply cannot support their breach of contract or bad faith claims. There are no facts and no inferences that could reasonably lead to a jury verdict in favor of Plaintiffs.

> The mere allegation that an insurer breached the duty of good faith and fair dealing does not automatically entitle a plaintiff to a jury trial. *Id.* (citing *City Nat'l Bank & Trust Co. v. Jackson Nat'l Life Ins.*, 1990 OK CIV APP 89, 804 P.2d 463, 468). A jury question arises only where relevant, material facts are in dispute or the undisputed facts permit different conclusions as to the reasonableness and good faith of the insurer's conduct. *Id.* "On a motion for summary judgment, the trial court must first determine, under the facts of the

particular case and as a matter of law, whether insurer's conduct may be reasonably perceived as tortious." *Id.* at 1436-37. "Until the facts, when construed most favorably against the insurer, have established what might reasonably be perceived as tortious conduct on the part of the insurer, the legal gate to submission of the issue to the jury remains closed." *Id.* "To hold otherwise would subject insurance companies to the risk of punitive damages whenever litigation arises from insurance claims." *Oulds*, 6 F.3d at 1437 (quoting *Manis*, 681 P.2d at 762).

*Houchin v. Hartford Life Ins. Co.*, No. CIV-14-522-D, 2016 WL 502075, at *6 (W.D. Okla. Feb. 8, 2016). Thus, Plaintiffs' claims should be not be submitted to the jury.

Respectfully Submitted,

*s/Matthew C. Kane*
Gerard F. Pignato, OBA No. 11473
Bruce A. Robertson, OBA No. 13113
Matthew C. Kane, OBA No. 19502
Susan F. Kane, OBA No. 19455
RYAN WHALEY COLDIRON JANTZEN
 PETERS & WEBBER PLLC
400 North Walnut Avenue
Oklahoma City, Oklahoma  73102
Telephone:   (405) 239-6040
Facsimile:   (405) 239-6766
Email:        jerry@ryanwhaley.com
              brobertson@ryanwhaley.com
              mkane@ryanwhaley.com
              susanfkane@ryanwhaley.com

**ATTORNEYS FOR DEFENDANT,
CSAA FIRE & CASUALTY INSURANCE
COMPANY**

14

## CERTIFICATE OF SERVICE

  I hereby certify that on February 7, 2019, I transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following registrants:

Steven S. Mansell, Esquire
Mark A. Engel, Esquire
Kenneth G. Cole, Esquire
M. Adam Engel, Esquire
Keith F. Givens, Esquire
MANSELL ENGEL & COLE

              *s/Matthew C. Kane*
              For the Firm