# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

RUSS GODFREY and )
NATALIE GODFREY, )
)
Plaintiffs, )
)
) Case No. CIV-19-00329-JD
CSAA FIRE & CASUALTY )
INSURANCE COMPANY, )
a foreign corporation, )
)
Defendant. )

## ORDER

Before the Court are Plaintiffs' Motions in Limine [Doc. No. 51] and Defendant's

Motions in Limine [Doc. Nos. 53, 54, 55, 56, 57, 59 and 60]. The Court held a hearing on

these motions on February 27, 2020. [*See* Doc. Nos. 66 and 99].

## I.    Background

Plaintiffs Russ and Natalie Godfrey ("Godfreys") claim that Defendant CSAA Fire

& Casualty Insurance Company ("CSAA") breached the parties' insurance contract and

breached the duty of good faith and fair dealing when CSAA denied a claim for roof

damage following a storm in February 2018. [Doc. No. 12]. As reflected in the Court's

minute sheet from the hearing [Doc. No. 99], Godfreys' Motions in Limine Nos. 2, 3, 4,

and 8 [Doc. No. 51], and CSAA's Motions in Limine Nos. 2 and 4-8 [Doc. Nos. 54 and

55] were resolved at or before the hearing on February 27, 2020. The remaining Motions

in Limine are discussed below.

## II. __Applicable law__

A motion in limine is a "'pretrial request that certain inadmissible evidence not be referred to or offered at trial.'" *Edens v. The Netherlands Ins. Co*., 834 F.3d 1116, 1130 (10th Cir. 2016) (quoting Black's Law Dictionary (10th ed. 2014)). It "'is a request for guidance by the court regarding an evidentiary question, which the court may provide at its discretion to aid the parties in formulating trial strategy.'" *Id*. (quoting *Jones v. Stotts*, 59 F.3d 143, 146 (10th Cir. 1995)).

A court's in limine rulings are preliminary and are subject to change as the case unfolds or at its discretion. *Luce v. United States*, 469 U.S. 38, 41-42 (1984). Motions in limine that generally lack specificity are properly denied. *See Shotts v. GEICO Gen. Ins. Co.*, No. 16-cv-1266-SLP, 2018 WL 4832625, at *1 (W.D. Okla. July 12, 2018) (unpublished); *Mantle v. Albertson's, Inc.*, No. 03-cv-1601-T, 2004 WL 7330805, at *2 (W.D. Okla. Sept. 29, 2004) (unpublished).

The Court's analysis is guided by Federal Rule of Evidence 102: that the Federal Rules of Evidence "should be construed so as to administer every proceeding fairly, eliminate unjustifiable expense and delay, and promote the development of evidence law, to the end of ascertaining the truth and securing a just determination." The Court must determine relevancy, *i.e*., whether the evidence has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Fed. R. Evid. 401; [1] *see also* Fed. R.

---

[1] Evidence is relevant if:

Evid. 402.[2] However, the Court may exclude otherwise relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 403.

### III. <u>Godfreys' Remaining Motions in Limine</u>

### A. Motion in Limine No. 1 – *Godfrey v. Travelers* prior litigation.

The Godfreys first seek to exclude *Godfrey v. Travelers*, Russ Godfrey's settled litigation from 2004 to 2005 over a denied insurance claim involving a different house that the Godfreys no longer own, a different insurance company, and a different type of claim. [*See* Doc. No. 51 at 1]. CSAA responds that evidence of the Godfreys' prior litigation is relevant if the claims are "substantially similar," that the pleadings in the *Travelers* case and this case are virtually identical, and that this evidence is needed to challenge the Godfreys' credibility. [Doc. No. 81 at 9]. At the hearing, CSAA argued that the evidence of this litigation shows a pattern of claims and lawsuits which goes to the Godfreys' bias and credibility, and that an indirect consequence might be that it shows the plaintiffs are litigious. The Godfreys replied at the hearing that there is nothing

---

(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and

(b) the fact is of consequence in determining the action.

[2] Relevant evidence is admissible unless any of the following provides otherwise:

- the United States Constitution;
- a federal statute;
- these rules; or
- other rules prescribed by the Supreme Court.

Irrelevant evidence is not admissible.

similar about the two claims and that they would be unfairly prejudiced showing prior pleadings to the jury because these are form pleadings drafted by the attorneys, which the jury will not understand. Additionally, the Godfreys argued that the claims are predicated upon different issues—the Travelers claim involved a slab issue in the kitchen, and the CSAA claim involves, according to the Godfreys, a change in the reason for the denial of a claim on their residential roof.

The Tenth Circuit applies the following four-part test to evidence of other acts:

(1)     the evidence must be offered for a proper purpose;

(2)     the evidence must be relevant;

(3)     the probative value of the evidence must not be substantially outweighed by its potential for unfair prejudice (Fed. R. Evid. 403); and

(4)     the jury must be given the proper limiting instructions upon request.

*Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1227 (10th Cir. 2000).

When asked at the hearing what the "proper purpose" of the evidence is and how it is relevant, CSAA's counsel responded that it would go to Godfreys' potential bias and credibility and that "an indirect consequence" is it could show the plaintiffs are litigious. Such evidence can be proper and relevant to bias and credibility depending on the circumstances. However, CSAA has presented nothing to indicate that Mr. Godfrey was not credible in the prior *Travelers* litigation (*e.g.*, that the claim was fraudulent or submitted for an improper purpose), and has made no showing of how this prior litigation proves any bias; it is the fact of the *Travelers* litigation itself that CSAA would like to introduce to undermine credibility or to show bias.

Authorities from the Seventh and Second Circuits, which the Court finds persuasive, hold that evidence of a plaintiff's prior lawsuits is not admissible simply to prove that a plaintiff is litigious. *See Gastineau v. Fleet Mortgage Corp.*, 137 F.3d 490, 495–96 (7th Cir. 1998); *Outley v. City of New York*, 837 F.2d 587, 592 (2d Cir. 1988). The Court finds that because the only relevance of this prior litigation that CSAA has shown would be an impermissible one (litigiousness), the evidence should be excluded as not relevant. The Court also does not find—based on what has been presented to the Court in briefing and at argument—that the allegations in the two cases (the *Travelers* case filed pre-*Twombly* and this case filed post-*Twombly*)[3] are close enough to have probative value to the facts at issue here.

Further, even if the evidence were deemed relevant, the probative value of *Godfrey v. Travelers* in this case is substantially outweighed by the risk of unfair prejudice and confusion of the issues. *See* Fed. R. Evid. 403. The *Travelers* litigation is remote in time and involves a different insurer, different home, and different policy. The risk of unfair prejudice is high that based on nothing more than the fact of Mr. Godfrey filing a prior insurance lawsuit, the jury would question the validity of the current claim. The Court also is concerned about wasting time and undue delay, as the Godfreys would want to explain the circumstances of that case, how it was different, and that they succeeded in obtaining a settlement. *Cf. Outley*, 837 F.2d at 591-95 (analyzing Fed. R. Evid. 403 factors based on reference to previous lawsuits to impeach credibility).

---

[3] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

Both parties cite *Richardson v. Missouri Pacific R. Co.*, 186 F.3d 1273 (10th Cir. 1999) (CSAA in its response brief [Doc. No. 81 at 7-8], and Godfreys at the hearing on February 27, 2020). *Richardson* is inapposite. In that case, the "critical issue" that incorporated the prior case was whether an injury from 1996 (the injury at issue) aggravated a prior 1986 injury for which the plaintiff had a prior lawsuit and settlement. *Id.* at 1278. In addition to aggravation issues, there were issues of accord and satisfaction. *Id*. No such issues are present between the current litigation and *Godfrey v. Travelers*. Regarding damages, the Court finds that this litigation would be too remote and unconnected to the present case to be relevant or have probative value to alleged damages this case, unless the Godfreys open the door to it.

Additionally, CSAA cites *Karns v. Emerson Elec. Co.*, 817 F.2d 1452, 1459–60 (10th Cir. 1987) for the proposition that evidence of prior lawsuits is admissible so long as the prior case is "substantially similar" to the case at issue. [Doc. No. 81 at 8-9]. However, *Karns* is a products-liability case, and the entire reasoning behind finding that evidence of prior lawsuits can be admissible in such cases was because the evidence "has at least some tendency to show that defendant was on notice concerning possible defects in its product." *Id*. at 1460 n.8. *Karns* has no applicability in this case—CSAA is a different defendant, and prior notice is not an issue.

The Godfreys' Motion in Limine No. 1 is GRANTED.

**B.**     **Motion in Limine No. 5 - Criminal allegations related to Ultimate Roofing.**

In Motion in Limine No. 5, the Godfreys seek to exclude evidence of any alleged criminal charges against the principals of Ultimate Roofing. [Doc. No. 51 at 2]. Ultimate

Roofing performed repairs on the Godfreys' roof after damage in April 2017, as well as the subject damage from February 2018. [*Id.*]. The principals of Ultimate Roofing were recently charged with various felonies by the Attorney General of Oklahoma. *See, e.g.*, *Oklahoma v. Smith et al.*, Oklahoma County Case No. CF-2020-42 (Home Repair Fraud and Embezzlement). The Godfreys claim that these proceedings are "completely unrelated to this case," are not relevant, and any relevance is outweighed by unfair prejudice. [Doc. No. 51 at 2].

CSAA argues that the reports related to the damage to the Godfreys' roof were drafted by Allen Lippoldt ("Mr. Lippoldt") and bear the name of Ultimate Roofing, so the jury is entitled to know the criminal allegations asserted against the principals of Ultimate Roofing. [Doc. No. 81 at 12-13]. CSAA noted at the hearing that Ultimate Roofing is integral to the Godfreys' claim. Additionally, CSAA contended at the hearing that this information is relevant to whether Mr. Lippoldt has a bias and incentive to tailor his testimony to stay out of trouble or to assist the principals of Ultimate Roofing in their criminal defense.

The Godfreys' damages report bears the name "Ultimate Roofing," and it was not submitted by Mr. Lippoldt in his individual capacity [Doc. No. 81-8]. Evidence of Ultimate Roofing's veracity, credibility, and Mr. Lippoldt's possible bias is admissible. *Cf. United States v. Abel*, 469 U.S. 45, 52 (1984) ("Bias is a term used in the 'common law of evidence' to describe the relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party."). At the hearing and in their reply brief [Doc. No. 85], the Godfreys focused

primarily on how the evidence was irrelevant to Mr. Lippoldt's testimony. However, this argument misconstrues the inquiry; CSAA argues that it intends to introduce the evidence to challenge *Ultimate Roofing* and the damages report, not solely to challenge Mr. Lippoldt (although CSAA argues that the evidence will also be used to challenge Mr. Lippoldt's credibility and bias).

This ruling turns on evidence that is not currently before the Court and will not be before the Court until trial. It also turns on how the parties might attempt to use the evidence at trial. "Normally, such weighing [of probative value to unfair prejudice] should be done against a backdrop of the actual evidence at trial, making a final decision in a pretrial hearing highly unlikely." *Richardson*, 186 F.3d at 1276.

Consistent with *Richardson*, the Court DENIES the motion as premature, without prejudice to raising the issue at trial. Counsel should approach the bench before introducing evidence that could be subject to Godfreys' Motion in Limine No. 5. The Court will caution that if the evidence is used solely to attack the bias or credibility of Mr. Lippoldt in his personal capacity, the Court is inclined to exclude use of the evidence in that way at trial.

Godfreys' Motion in Limine No. 5 is therefore DENIED without prejudice to reasserting at trial.

## C.    Motion in Limine No. 6 – Godfreys' prior claims with CSAA.

In Motion in Limine No. 6, the Godfreys seek to exclude any evidence of prior claims they had with CSAA, except the 2017 claim on the same roof that is at issue in

this litigation. [Doc. No. 51 at 3]. The Godfreys did not specify which claims they seek to exclude. CSAA identified the following prior claims:

- May 29, 2012 – Hail damage;

- May 18, 2013 – Hail damage;

- August 8, 2013 – Sump backup;

- September 29, 2013 – Lightning damage;

- May 6, 2015 – Flat roof damage;

- November 21, 2011 – Auto policy;

- February 9, 2014 – Auto policy.

[Doc. No. 81 at 9-10]. CSAA argues that because the Godfreys allege that CSAA commits bad faith "as a matter of standard business practice," the jury should know the Godfreys' prior claims. [*Id*. at 10 (citing Pet. ¶ 7)].

The Court agrees with CSAA that the nature of the Godfreys' allegations in this case renders their prior claims with CSAA relevant. This is also a proper purpose under *Koch*, 203 F.3d at 1227. The Godfreys essentially allege that CSAA has a history of bad-faith and contract-breaching conduct; evidence of CSAA's dealings with the Godfreys themselves is relevant to these allegations. Any risks identified by Rule 403 are substantially outweighed by the probative value of the prior claims to the Godfreys' allegations against CSAA. The prior claims are also relevant to the Godfreys' experience with and knowledge of CSAA's claims process and, for the property claims, potentially the insurance policy. *See, e.g.*, *Smith v. State Farm Fire & Cas. Co*., No. 1:12-cv-00009-

CFB, 2013 WL 12156073, at *1 (S.D. Iowa Apr. 23, 2013) (unpublished) (allowing evidence of plaintiffs' prior insurance claims for the "purpose of showing their familiarity with the insurance claims process and recovery"). The Court will consider a proper limiting instruction to the jury at the final jury-instruction conference. *Koch*, 203 F.3d at 1227 (final factor of the "other acts" analysis is whether a requested limiting instruction is proper).

Godfreys' Motion in Limine No. 6 is DENIED.

**D.     Motion in Limine No. 7 – Godfreys' prior injury claims, car wrecks and worker's compensation claims.**

Godfreys' Motion in Limine No. 7 seeks to exclude any evidence of any of Godfreys' prior personal-injury claims, car wreck, or workers' compensation claims. [Doc. No. 51]. Motion in Limine No. 7 fails to identify what these claims are. CSAA argues in the response that these include Mr. Godfrey's personal-injury claim against his gym in 1985, as well as claims against a different gym and a dumbbell-rack manufacturer. [Doc. No. 81 at 10-11]. At the hearing, the parties agreed that CSAA will not reference the workers' compensation claims, foreclosure claims, or financial claims, and that it is the gym-related, personal-injury claims that are at issue.

Godfreys' unrelated litigation history has been excluded, as set forth above when the Court granted Godfreys' Motion in Limine No. 1 concerning *Godfrey v. Travelers*. The Court applies the same reasoning in granting Godfreys' Motion in Limine No. 1 in granting Godfreys' Motion in Limine No. 7.

Additionally, the gym-related litigation in Godfreys' Motion in Limine No. 7 is even further removed from the present litigation. While CSAA counsel's affidavit and hearsay within the affidavit suggest the gym-related litigation was fraudulent, CSAA has not listed any witness or exhibit to go before the jury to show fraud. Counsel is not a witness and is not permitted to "testify" through questioning of the plaintiffs. And injuries and damages so many years ago do not seem relevant or probative to this case. In sum, litigation thirty-five years ago that does not concern a first-party bad faith claim, as we have here, and does not demonstrate a series of fraudulent lawsuits by the Godfreys amounting to a fraudulent pattern and practice is too remote, too confusing, and too prejudicial to be admitted in this case, unless the plaintiffs somehow open the door to it at trial. *See* Fed. R. 403; *see also Outley*, 837 at 592 (explaining a plaintiff's litigiousness may have some slight probative value, but that value is outweighed by the substantial danger of jury bias against a chronic litigant. The trial court has a duty to prevent exploitation of this prejudice) (internal quotation marks and citations omitted).

Godfreys' Motion in Limine No. 7 is GRANTED.

## IV.    CSAA's Remaining Motions in Limine

### A.    CSAA's Motion in Limine No. 1 - Oklahoma's Unfair Claims Settlement Practices Act.

CSAA's first Motion in Limine seeks to exclude any evidence or reference to Oklahoma's Unfair Claims Settlement Practices Act ("Act"), 36 Okla. Stat §§ 1250.11–1250.16, arguing that because there is no private right of action under the Act, it would be "irrelevant and unfairly prejudicial to allow the Plaintiffs to parade out various alleged

'violations' of the Act as 'proof' of bad faith." [Doc. No. 53 at 2]. At the hearing, CSAA argued that *Aduddell Lincoln Plaza Hotel v. Certain Underwriters at Lloyd's of London*, 348 P.3d 216 (Okla. Civ. App. 2015), is "right on point" and holds that the Act does not function as an appropriate guide for the jury to determine bad faith. The Godfreys respond that reference to the Act is admissible to establish the standard of care in claims handling. [Doc. No. 79 at 8]. At the hearing, Godfreys' counsel acknowledged that there is no reason to even say the words Unfair Claims Settlement Practices Act in this case, unless CSAA somehow opens the door.

Every case that the Godfreys cite opposing CSAA's motion either predates the opinion in *Aduddell*, where the Oklahoma Court of Civil Appeals expressly rejected their argument, or points to other state courts (*e.g.*, California, Idaho, New Jersey, Pennsylvania, Colorado) that are not addressing Oklahoma's Act or Oklahoma law [Doc. No. 79 at 8-12]. *See Aduddell*, 348 P.3d at 223-24 (explaining the Act "does not establish standards of care or standards of conduct for measuring whether an insurer has violated its duty of good faith and fair dealing" and the "Act may provide guidance to a trial court in determining whether to grant summary judgment, but it does not function as an appropriate guide for a jury to determine bad faith.").

Applying *Aduddell*, other federal judges in Oklahoma have also rejected the Godfreys' argument about standard of care. *See, e.g.*, *Stewart v. Brotherhood Mut. Ins. Co.*, No. 16-cv-488-JED-FHM, 2018 WL 4092018, at *6 (N.D. Okla. July 10, 2018) (unpublished); *Dennis v. Progressive N. Ins. Co.*, No.17-cv-182-SLP, 2018 WL 4871039, at *3 (W.D. Okla. Apr. 9, 2018) (unpublished); *Stroud v. Liberty Mut. Ins. Co.*, No. 15-

cv-363-GKF-PJC, 2016 WL 10038544, at *2 (N.D. Okla. Oct. 11, 2016) (unpublished).

The Court is persuaded by these cases and sees no reason to deviate from their reasoning.

Considering *Aduddell*, evidence and reference to the Oklahoma Unfair Claims Settlement

Practices Act as a proxy to determine bad faith is irrelevant under Federal Rule of

Evidence 401 and, regardless, would be unfairly prejudicial and confuse the issues under

Federal Rule of Evidence 403.

CSAA's Motion in Limine No. 1 is therefore GRANTED.

**B.** **CSAA's Motion in Limine No. 3 – Lay witness testimony or counsel argument of what is "fair" or "reasonable."**

CSAA next seeks to exclude evidence or argument on what is "fair" or

"reasonable" because these phrases "will serve no purpose other than to unfairly

prejudice CSAA by confusing the issues and misleading the jury." [Doc. No. 54 at 2].

CSAA elaborates by providing anticipated examples, including questions like "(1) Would

you agree that (certain type of conduct) would be unfair to your insured? (2) Would you

agree that (certain type of conduct) would be unreasonable?" [*Id*. at 3].[4] CSAA's

conclusion is that it is the role of the Court, not counsel or witnesses, to instruct on the

law and to supply legal conclusions. [*Id*. at 4-7]. The Godfreys respond that such phrases

are permissible, and "[i]t is remarkable that in a case dealing with 'fairness' and

'reasonableness,' the Defendant asserts that those words should not be used." [Doc. No.

79 at 15].

---

[4] As the parties' counsel noted in the hearing, these firms and attorneys have had several cases against each other over the years, so counsels' speculation about the types of arguments to anticipate would not be baseless.

"An opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704. However, "opinions that merely tell the trier of fact what result to reach or state a legal conclusion in a way that says nothing about the facts still are objectionable. This is because such opinions are not 'helpful' as required by Rule 701 and do not 'help' as required by Rule 702." 29 Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc. Evid*. § 6284 (2d ed.); *see also United States v. Richter*, 796 F.3d 1173, 1195 (10th Cir. 2015) (Rule 704 testimony must still "be helpful to the trier of fact").

It is not clear to the Court that questions to witnesses concerning fairness and reasonableness will help the jury in this case, will be based on a witness's factual perception,[5] and will avoid telling the jury how to rule. However, given the lack of specificity in the motion, the Court is unable to make any meaningful ruling on this issue and finds that any ruling would be premature. *See Richardson*, 186 F.3d at 1276.

The Court cautions counsel for both parties, however, that questions or comments by a witness or counsel that misstate Oklahoma law will encroach on the Court's role in instructing the jury on the applicable law, will confuse the jury, and will not be permitted by the Court. *Cf. Specht v. Jensen*, 853 F.2d 805, 810 (10th Cir. 1988) ("In no instance can a witness be permitted to define the law of the case."); *see also Stewart v. Brotherhood Mut. Ins. Co.*, No. 16-cv-488-JED-FHM, 2018 WL 4092018, at *6-7 (N.D.

---

[5] *See* Rule 701: "If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."

Okla. July 10, 2018) (unpublished) (citing *Specht* in granting motion in limine for questions or contentions that insurer must give "the benefit of the doubt" to its insureds to satisfy duty of good faith and fair dealing; "questions or comment by a witness or Plaintiffs' counsel suggesting that Oklahoma law requires giving 'the benefit of the doubt' to Plaintiffs would be a misstatement of the law and would encroach on the Court's role in instructing the jury on the applicable law"). The jury will be equipped to form its own conclusion on whether the insurance policy was breached and whether CSAA had a reasonable, good-faith belief in denying and not paying the claim.

CSAA's Motion in Limine No. 3 is DENIED without prejudice to the parties reasserting objections at trial should counsel violate the Court's cautions above.

## C. CSAA's Motion in Limine No. 9 – Arguments or evidence related to punitive damages in the first state of trial.

In Motion in Limine No. 9, CSAA seeks to exclude arguments from the Godfreys or their counsel during the compensatory stage of trial in the nature of "(1) punitive damages, (2) punishing the Defendant, (3) making an example of Defendant, and/or (4) sending a message." [Doc. No. 56 at 1]. The Godfreys generally do not oppose this motion in limine but contend that they should be permitted to advise the jury during voir dire and opening statements that they will be seeking punitive damages. [Doc. No. 80 at 9-11].

The parties acknowledged in the briefing and at the hearing that in Oklahoma, punitive damages are recoverable for breach of the duty of good faith and fair dealing if the jury finds by clear and convincing evidence that the insurance company "recklessly

disregarded its duty to deal fairly and act in good faith with its insured" or "intentionally and with malice breached its duty to deal fairly and act in good faith with its insured." *See* 23 Okla. Stat. § 9.1(B) (Category I) and (C) (Category II); Oklahoma Uniform Jury Instruction (OUJI)-CIV, Instruction No. 22.5. The parties also acknowledged that punitive damages will be addressed in the second stage of trial.

The Tenth Circuit has addressed the use of punitive damages in the first phase of a trial under Oklahoma law, and this Court is bound to follow the Tenth Circuit. In *Racher v. Westlake Nursing Home Limited Partnership*, the court "agree[d] that portions of the argument [inviting an award based on consideration of deterrent and punitive rather than compensatory factors] were improper at the time they were presented." 871 F.3d 1152, 1168 (10th Cir. 2017) (holding no prejudicial effect warranting a new trial). While the court recognized that the parties "have a statutory right to present argument on the fact question as to the amount of punitive damages," this argument is allowed in the second stage of trial, not the first. *Id.* at 1169 (quoting *Lierly v. Tidewater Petroleum Corp.*, 139 P.3d 897, 907 (Okla. 2006)). In the first stage of the trial, the jury determines liability, the amount of actual damages, and whether the defendant acted with reckless disregard or intentionally and with malice. *Id.* at 1169 (citing *Lierly*, 139 P.3d at 906). If the jury determines the defendant acted with reckless disregard or intentionally and with malice, it is in the second stage that "the jury determines the amount of punitive damages that will appropriately" punish and deter such behavior in the future. *Id.*

CSAA's Motion in Limine No. 9 is granted in part. The Court will conduct voir dire and include questions intended to elucidate any bias a potential juror might have for

or against awarding punitive damages. The Godfreys' counsel may advise the jury that they intend to seek punitive damages, but the Godfreys and their counsel are prohibited from using language about sending a message, making an example of CSAA, punishing CSAA, or inviting the jury to award damages based on punishment or deterrence when only compensatory damages are at issue in the first stage of the trial. *See Cook v. Med. Sav. Ins. Co*., No. 05-cv-289-C, 2006 WL 1049253, at *2 (W.D. Okla. April 13, 2006) (unpublished) (explaining plaintiff may comment on request for punitive damages in voir dire or opening statement). The Godfreys may seek to admit in phase one of the trial evidence of reckless disregard, or intent with malice. If the issue of punitive damages goes to the jury and the jury makes a finding of the reckless disregard or intent with malice, then and only then are the Godfreys permitted to put on evidence of punitive damages (such as the factors set forth in 23 Okla. Stat. § 9.1(A)). *See Charles A. Shadid, L.L.C. v. Aspen Specialty Ins. Co*., No. 15-cv-595-D, 2018 WL 3420816, at *2-3 (W.D. Okla. July 13, 2018) (unpublished) (applying two-stage procedure for punitive damages); *Dennis*, 2018 WL 4871039 at *13 (same).

CSAA's Motion in Limine No. 9 is GRANTED IN PART as set forth above.

**D. CSAA's Motion in Limine No. 10 – Litigation-induced stress.**

In Motion in Limine No. 10, CSAA seeks to exclude all evidence and argument concerning litigation-induced stress, including "distress relating to the litigation process, including depositions, meetings with their attorneys, waiting for trial, the trial itself." [Doc. No. 57 at 1]. CSAA cites multiple binding and nonbinding authorities for the proposition that this kind of evidence is inappropriate because a defendant cannot defend

itself from these kinds of damages. The Godfreys respond that this evidence is admissible, citing cases holding that evidence of an insurer's acts in litigation can be admissible in some circumstances.

Evidence of litigation-induced stress is regularly excluded. *See, e.g.*, *Zimmerman v. Direct Fed. Credit Union*, 262 F.3d 70, 79 (1st Cir. 2001) ("[L]itigation -induced stress is not ordinarily recoverable as an element of damages."); *Stoleson v. United States*, 708 F.2d 1217, 1223 (7th Cir. 1983) ("It would be strange if stress induced by litigation could be attributed in law to the tortfeasor."). As Judge Posner noted in *Stoleson*, "[a]n alleged tortfeasor should have the right to defend himself in court without thereby multiplying his damages more than five-fold." 708 F.2d at 1223. *See also Stroud*, 2016 WL 10038544 at *3 (admonishing counsel for citing *Badillo v. Mid Century Ins. Co.*, 121 P.3d 1080 (Okla. 2005) and *Barnes v. Okla. Farm Bureau Mut. Ins.*, 11 P.3d 162 (Okla. 2000), for the proposition that "litigation damages are recoverable as a matter of course in Oklahoma").

The Court is persuaded by these authorities. Admitting evidence of litigation-induced stress when it is not recoverable renders the evidence irrelevant, potentially confusing to the jury, and a waste of time under Rule 403. The Court also agrees with the reasoning in *Zimmerman* and *Stoleson* that holding otherwise would leave a defendant without a defense to such damages, absent succumbing to a plaintiff's demands. While the Godfreys can show and argue that their claim was denied and unpaid to date and they are damaged based on these facts, that is many steps removed from recovering for litigation-induced stress.

Additionally, the Court is bound to follow Tenth Circuit law, and the Tenth Circuit does not allow litigation-type references directed at the opposing party or opposing counsel. *See Whittenburg v. Werner Enterprises Inc.*, 561 F.3d 1122, 1128 (10th Cir. 2009). According to the court, "[t]o imply or argue that the mere act of defending oneself, or the mere act of bringing suit, is reprehensible serves no proper purpose. . . ." *Id.* at 1130; *see also Oulds v. Principal Mut. Life Ins. Co.*, 6 F.3d 1431, 1442 (10th Cir. 1993) ("No reasonable inference of bad faith arises from the insurer's withholding payment based on a legitimate dispute."). The court recognized that "[i]t is not the function of closing argument 'to debase, degrade or impugn the veracity of a litigant' or opposing counsel" and that our system should instead "focus on the merits of the case at hand, and that [counsel] can disagree about those merits without being disagreeable." *Whittenburg*, 561 F. 3d at 1130 (citing Model Rules of Prof'l Conduct R. 3.4 ("A lawyer shall not . . . in trial . . . state a personal opinion as to the justness of the cause, the credibility of a witness, [or] the culpability of a civil litigant. . . .")). As the Court conveyed at the hearing on February 27, 2020, the Court cautions the parties and their counsel that it will not allow these types of attacks.

CSAA's Motion in Limine No. 10 is GRANTED.

**E.  CSAA's Motion in Limine No. 11 – Independent Adjuster Michael White.**

Motion in Limine No. 11 seeks to prohibit the Godfreys, their witnesses, or their counsel from referencing Michael White ("Mr. White") as either an agent or employee of CSAA in any capacity, or stating that CSAA had authority (whether apparent, express, implied, or incidental) over Mr. White. [Doc. No. 59]. The parties do not dispute that

CSAA retained Mr. White through U.S. Adjusting (a separate, nonparty company) to inspect the Godfreys' roof. [Doc. No. 82 at 2]. The Godfreys claim that Mr. White was the only person who inspected the roof on behalf of CSAA, and that Mr. White initially determined that the loss was covered only to have the decision reversed by CSAA. [*See generally id.*]

There appears to be no dispute that Mr. White was not an "employee" of CSAA. [Doc. No. 59-1–2 (evidence of Mr. White employed by U.S. Adjusting)]. CSAA's Motion in Limine No. 11 is GRANTED in this regard, without prejudice to the Godfreys raising the issue at trial with evidence of CSAA employing Mr. White.

Regarding agency, this motion in limine lacks any specificity regarding exactly what it seeks to exclude. Mr. White has some agency capacity with CSAA, as it is undisputed that CSAA retained him through U.S. Adjusting to inspect the roof for CSAA. The Court also agrees with the Godfreys that the duties to an insured are nondelegable. *See, e.g.*, *Wathor v. Mutual Assurance Adm'rs, Inc.*, ¶ 6, 87 P.3d 559, 561–62 (Okla. 2004). Because Motion in Limine No. 11 lacks specificity as to what it seeks to exclude, and the basis for the same, it is DENIED without prejudice to reasserting at trial. *See Shotts*, 2018 WL 4832625 at *1; *Mantle*, 2004 WL 7330805 at *2. Without more, a ruling at this stage is premature until the Court can fully appreciate how this evidence will be used "against a backdrop of the actual evidence at trial." *Richardson*, 186 F.3d at 1276.

CSAA's Motion in Limine No. 11 is GRANTED as to Mr. White as an employee of CSAA, and DENIED for any other purpose, without prejudice to reasserting at trial.

**F.     CSAA's Motion in Limine No. 12 – Reference to claim-handling guidelines.**

Finally, CSAA moves in Motion in Limine No. 12 to exclude any reference to CSAA's claim-handling guidelines and claim bulletins because these documents "do not establish standards of care for bad faith purposes." [Doc. No. 60 at 1]. CSAA cites to many nonbinding authorities for this proposition, as well as *Johnson v. Liberty Mutual Fire Ins. Co.*, 648 F.3d 1162, 1166 (10th Cir. 2011), discussed below. The Godfreys failed to file a timely response to CSAA's Motion in Limine No. 12. The Scheduling Order provides that responses to motions in limine were due by February 14, 2020. [Doc. No. 15 ¶ 15]. The Godfreys hand-delivered an unfiled response to the Court and to CSAA at the hearing on February 27, 2020. Because the response has not been filed, and the Godfreys have neither sought nor been granted leave to file the response out of time, the Court will not consider the response. Perhaps as a cautionary measure, on February 28, 2020, CSAA filed a reply to the hand-delivered response. [Doc. No. 100]. Because the Court has not considered the Godfreys' unfiled response and therefore there is no filing to reply to, the reply [Doc. No. 100] is stricken.

Although Motion in Limine No. 12 "may, in the discretion of the court, be deemed confessed" because no response has been timely filed, LCvR7.1(g), the Court refuses to exercise its discretion to deem the motion confessed because the Court finds that wholesale exclusion of this evidence would be improper in this case, particularly where it has been previously disclosed and listed as an exhibit by the Godfreys.

CSAA cites *Johnson* in support of its conclusion that the claims-handling guidelines should be excluded. 648 F.3d at 1166 ("When you violate a corporate policy,

you may well be in trouble with your boss, but that doesn't necessarily mean you have committed a tort."); [Doc. No. 60 at 2]. In *Johnson*, the plaintiffs claimed that Liberty Mutual was liable on a theory of spoliation, bailment, and bad faith for failing to retain taillights years after a car crash, even though Liberty Mutual's internal policy required retaining the taillights for six years after closing the file. *Id*. at 1163-65. The plaintiffs claimed that they could have received more money from defendants in a separate personal-injury lawsuit had Liberty Mutual held onto the taillights. *Id*. The Tenth Circuit affirmed the district court's dismissal of the claims because the plaintiffs could not show that their claimed damages were reasonably foreseeable. *Id*. at 1164.

Nothing in *Johnson* provides that the claim-handling guidelines should be excluded in this case. Under CSAA's theory in Motion in Limine No. 12, in *Johnson* the Court should have excluded or not considered the internal policy itself. This did not occur. The policy remained a part of the evidence in the case, and more importantly, *Johnson* made no evidentiary or relevancy holdings. At most, *Johnson* and the other nonbinding authorities CSAA cited in Motion in Limine No. 12 stand for the proposition that a violation of internal policy or guidelines does not constitute bad faith. The Court agrees with this proposition as a general matter. But CSAA can convey this to the jury without excluding the claim-handling guidelines, and it can object at trial if the Godfreys imply an incorrect legal standard under Oklahoma law. The Court declines to extend *Johnson* to exclude the claim-handling guidelines. *See ROC ASAP, L.L.C. v. Starnet Ins. Co*., No. 12-cv-461-D, 2014 WL 4631121, at *1 (W.D. Okla. Sept. 15, 2014) (unpublished) (denying motion in limine to exclude claim-handling guidelines after

granting summary judgment on bad faith because guidelines may be relevant to remaining breach of contract claim); *Kagan v. State Farm Mut. Auto. Ins. Co.*, No. 08-cv-04903-GAF (MANx), 2009 WL 10675116, at *2 (C.D. Cal. Nov. 12, 2009) (unpublished) (denying motion in limine to exclude claims-handling guidelines because "a claims adjustor's failure to adhere to reasonable standards established by the company would also be evidence relevant to the issue of bad faith").

CSAA's Motion in Limine No. 12 is DENIED without prejudice to reasserting at trial.

## V.   **CONCLUSION**

In summary, and as stated above and in the Court Minute [Doc. No. 99], the Court ORDERS that:

1. Godfreys' Motions in Limine No. 1 [Doc. No. 51] is GRANTED;

2. Godfreys' Motion in Limine No. 2 [Doc. No. 51] is GRANTED;

3. Godfreys' Motion in Limine No. 3 [Doc. No. 51] is GRANTED;

4. Godfreys' Motion in Limine No. 4 [Doc. No. 51] is GRANTED;

5. Godfreys' Motion in Limine No. 5 [Doc. No. 51] is DENIED;

6. Godfreys' Motion in Limine No. 6 [Doc. No. 51] is DENIED;

7. Godfreys' Motion in Limine No. 7 [Doc. No. 51] is GRANTED; and

8. Godfreys' Motion in Limine No. 8 [Doc. No. 51] is GRANTED.


1. CSAA's Motion in Limine No. 1 [Doc. No. 53] is GRANTED;

2. CSAA's Motion in Limine No. 2 [Doc. No. 54] is GRANTED IN PART;

3.  CSAA's Motion in Limine No. 3 [Doc. No. 54] is DENIED;

4.  CSAA's Motion in Limine No. 4 [Doc. No. 54] is GRANTED;

5.  CSAA's Motion in Limine No. 5 [Doc. No. 54] is GRANTED;

6.  CSAA's Motion in Limine No. 6 [Doc. No. 54] is GRANTED;

7.  CSAA's Motion in Limine No. 7 [Doc. No. 54] is GRANTED;

8.  CSAA's Motion in Limine No. 8 [Doc. No. 55] is GRANTED IN PART;

9.  CSAA's Motion in Limine No. 9 [Doc. No. 56] is GRANTED IN PART;

10. CSAA's Motion in Limine No. 10 [Doc. No. 57] is GRANTED;

11. CSAA's Motion in Limine No. 11 [Doc. No. 59] is GRANTED IN PART and

    DENIED IN PART; and

12. CSAA's Motion in Limine No. 12 [Doc. No. 60] is DENIED.

The above rulings are without prejudice, are preliminary, and are subject to change as the case unfolds or at the Court's discretion. *Luce*, 469 U.S. at 41-42. These rulings are subject to modification if a party opens the door to an otherwise excluded matter at trial. These rulings are further subject to the conditions and limitations set forth in the Court's prior rulings [Doc. No. 99] and at the hearing on these motions on February 27, 2020.

IT IS SO ORDERED this 4th day of March 2020.


_____
JODI W. DISHMAN
UNITED STATES DISTRICT JUDGE